## Louisville & Nashville Railroad Company v. Hanger.

(Decided December 17, 1915.)

### Appeal from Madison Circuit Court.

Railroads—Injuries to Animals on or Near Tracks—Presumption and Burden of Proof.—Section 809 of the Kentucky Statutes casts the burden upon the carrier, when stock is admittedly killed by the operation of one of its trains, to show that the killing did not occur through any negligence of it or of any of its agents or servants, but it has a right to disprove the presumption of negligence made by the statute. In this case, the engineer, fireman and brakeman who were aboard of the engine of the train which killed the stock testified that the accident occurred about seven o'clock P. M. in October, when it was measurably dark, and that the stock appeared upon the tracks some ten or fifteen feet, or hardly so much, immediately in front of the engine and that instant application of the emergency airbrakes was made and the rails sanded, and everything was done to prevent the accident that could have been done, but without success. They

were the only eye-witnesses and their testimony is not overcome by the testimony of plaintiff's witnesses showing that there were tracks along the side of the railroad tracks going in both directions. When the witness for plaintiff testified that what they observed was on the next day after the accident and it was shown by them that there were ten other mules which could have made those tracks, and that they and the two killed had an opportunity to make the tracks before the accident, and there was no testimony that these tracks were made by the two mules killed, and it was just as probable from this testimony that the tracks testified to could have been made either before or after the accident, or by the remaining ten mules, as well as by the two that were killed.

BENJAMIN D. WARFIELD, WALLACE & HARRISS and BURNAM & BURNAM for appellant.

J. A. SULLIVAN, JOHN NOLAND and W. S. MOBERLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On October 25, 1913, a train of the appellant, which was going from Richmond, Kentucky, to Frankfort, Kentucky, collided with two mules belonging to the appellee, which collision resulted in their death, and to recover the value of them, this suit was brought charging two grounds of negligence on the part of the appellant. The first ground of negligence alleged is that the appellant had negligently failed to maintain and keep in repair its part of the fence on the line between the right-of-way and appellee's farm, which fence was originally constructed under the statutes of this State by the appellant's remote vendor and the company also which constructed the road at that place, the Richmond, Nicholasville, Irvine & Beattyville Railroad Company, and by reason of such negligence the stock strayed upon the track and was killed. The second ground of negligence charged, is the failure of those in charge of the train to exercise ordinary care to discover the presence of the stock upon the track, previous to striking them, after their presence had been discovered, or could have been discovered by the exercise of ordinary care.

The answer denied the negligence, and in avoidance of the first ground for recovery stated, alleged that the remote vendor of appellant secured its right-of-way by condemnation proceedings instituted by it against the wife of appellee, who is the owner of the farm upon which they live, which resulted in a judgment in favor of Mrs. Hanger for the sum of $20,000.00, it consisting,

as stated therein, of three items: $2,000.00 for the value of the land taken; $16,000.00 for injuries to, and depreciation of the remainder of the farm, and $2,000.00 for extra fencing. This judgment was paid and a deed executed to the railroad company. Appellant claimed that the allowance and payment of the item of $2,000.00 for extra fencing exonerated it from the duty of either constructing or keeping in repair any fences along either side of its right-of-way through the farm in question. The lower court seems to have taken this view, and the case went to trial on the second ground of negligence above mentioned. There was a verdict and judgment for $300.00 in favor of plaintiff, and complaining of that, this appeal is prosecuted by appellant.

We will express no views as to the correctness of the ruling of the court in regard to the fencing proposition as it is not before us for determination.

Section 809 of the Kentucky Statutes casts the burden upon railroad companies when they kill stock upon their tracks to show that such killing was not produced by their negligence, and was not the result of the failure of their agents or servants to exercise ordinary care. This rule was followed, and observed, upon the trial of this case and the railroad company assumed the burden of disproving any negligence on its part. In doing this it introduced its engineer, firemen and head-brakeman, who, each and all, testified that this accident occurred some time near seven o'clock on the evening of October 25, 1913, while the train was running fifteen miles an hour, and it consisted of only an engine and caboose. They each testified that at that time it was practically dark, and that the head-light was burning, but that it cast a light only on the track or within a short distance on either side of the track; that it was properly equipped with air brakes and an appliance to throw sand upon the rails, and that this stock suddenly appeared on the track, on the right hand side, not exceeding fifteen or twenty feet in front of the engine; that the engineer immediately applied the emergency brakes and sanded the rails, and by the time this could be done the collision had occurred. These were the only eye witnesses to the accident. The appellee then introduced three witnesses, one of whom was John E. Baldwin, who was a neighbor farmer and one of the appraisers. They visited the place of the accident some time on the day following, and each of them testified substantially to the same facts, and their testimony is substantially the same as to what they observed, with reference to the finding of tracks at, and adjacent to, the place of the accident. The witness Baldwin testified upon this point as follows:

"Q. Did you see any tracks that morning along the right-of-way? A. There was twelve mules down there—ten mules got out; there was ten all up and down the track; I don't know how long they had been out there, tracks was dug on each side of the rail. Q. What direc tion were those tracks? A. Been all along up and down, tracks each way; they had been up there some time, from the looks of the tracks on each side of the rail. Q. You saw tracks coming in the direction of Richmond? A. Yes, sir. Q. Others coming back the other direction? A. Everywhere, up nearly to the bridge. Q. Then you saw tracks going in the direction of Richmond above the hangers? A. They had been grazing those mules—. Q. I will ask you to describe to the jury those tracks. A. Well, the mules had been along the tracks, both coming and going. Q. Was there any difference from the tracks coming up towards Richmond to the point beyond the hangers, those overhead irons that hang down there, any difference between those tracks and the tracks you saw going in the other direction? A. No, sir; didn't seem to be any difference. Q. Did you see any tracks between the ties? A. Down where? Q. Did you see any tracks near the railroad bed itself? A. Yes; tracks was dug down at—I don't know how long, but tracks was dug on each side of the road. Q The tracks you saw of the mules were up and down the right of way towards Richmond and every way? A. These mules had been on that road evidently for a good time, tracks was up and down each side of it, plenty of tracks."

The testimony of the other witnesses does not materially vary from his testimony. The proof further showed that there were twelve mules in the field, and that after the accident to the ones killed, the other ten were seen at different places upon the right-of-way. There was no testimony to the effect that the discovered tracks were made by the dead mules, or either of them, or that there was any peculiarity in any track which either of them might have made different from the tracks of the other ten. In fact, they were all young mules, measurably, if not the same age. It will be seen that the only evidence offered by the appellee to overcome the positive testimony of the witnesses as to how the accident occurred, is the fact that these tracks were observed going in both directions on the right-of-way, and not on the roadbed, without showing in the least particular anything from which any inference could be

drawn, or that the conclusion could be reached, that these tracks were made by the two mules, which were killed, any more than by the other ten that were unhurt; nor is there anything in the testimony to show how recently any of these tracks were made, or whether they were made upon the occasion of the accident, or before, or after that time; nor is there anything in the testimony from which the jury could legitimately infer that they were made at the time of the accident, much less by the mules that were killed. It will furthermore be seen that the tracks testified to were going in one direction as much as the other. In the case of Illinois Central Railroad Company v. Gholson, &c., 23 Ky. Law Rep., 2209, a very similar state of facts was before this court, and in determining the failure of the plaintiff to overcome the direct testimony of those in charge of the train, this court said:

"From the fact that live stock is killed by a railroad train, the statute raises a presumption of negligence in the killing. In this case the testimony of the train men and all the eye-witnesses clearly refuted this presumption. It then became the duty of appellee to show negligence by direct proof. It should be such as to of itself establish the negligence. It is not sufficient if it merely shows circumstances indicating the possibility of negligence in the case. The fact of finding the stock killed by the railroad train showed that much, at least. The statutory presumption above stated is a rule of necessity. But the ends of justice do not require it to be further extended.

"We are of opinion that in view of the evidence that horses and mules were permitted to run at large in great numbers and indiscriminately in this section, that they were frequently seen in this particular neighborhood, the evidence merely of tracks seen two days after the accident was not a circumstance sufficient to overcome the positive testimony of appellant's witnesses. In fact, there is no conflict of testimony in this case. Taking all as true that was said by appellees' witnesses, it does not involve the disbelief of any statement made by appellant's witnesses. For, it may be admitted as true that there were tracks as deposed to by appellees' witnesses; that these tracks showed for some 200 or 300 yards, that the mules had run up the railroad track; yet it is not shown that the tracks mentioned were made

by these mules, or that they were made on the occasion of the killing. If there was not the statutory presumption of negligence (and when it has been sufficiently overcome by positive evidence, it is the same as if there was no presumption, for all practical ends) and the plaintiff was under the necessity of proving negligence on the part of the railroad company in killing the stock, when the mere presence of tracks, found two days after the accident, and which, as shown by the evidence, may or may not have been made by these mules, or may or may not have been made on this occasion, the plaintiff's case would fail for want of proof.''

In the still later case of Remley v. I. C. R. R. Co., 151 Ky., 796, this court in commenting upon a similar condition of the record, and denying the sufficiency of the plaintiffs' testimony to fasten negligence upon the railroad company, says:

''There were no eye-witnesses to the accident, save the fireman and engineer. They testified that it was a dark, foggy night; that their train, a heavy freight of some fifty or more cars, was running twenty or twenty-five miles an hour; that they did not see these animals until they were very close to them, from ten to thirty feet; and that then, it was absolutely impossible to have done anything to have avoided striking them. The plaintiffs, in addition to identifying the stock and proving its value, introduced evidence showing that the stock could be traced for a distance of 100 to 150 yards along the roadbed, from the point where it came upon the track to the point where it was struck and killed. It is argued from this that, inasmuch as the track at that point, for a mile or more, is practically straight, had those in charge of the train been at their post of duty, they must have seen the stock in time to have avoided striking it. This argument, however, is based upon the assumption that the stock was standing at this point upon the track, when the train came in sight of it. There is no evidence to support this theory; on the contrary, plaintiffs' own evidence shows that, from the indentations in the ground, this stock was running over the roadbed from the point where it was struck, hence, it is altogether probable that it was only on the track such length of time as would take it to run 150 yards, which would necessarily be but a few seconds. Evidently these animals came upon the track but a short distance

in front of the approaching train, and, in an effort to escape, ran down about 100 or 150 yards, at which point they were overtaken and killed."

Many other cases could be cited, but we deem it unnecessary. The cases relied upon by appellee do not militate against the rules stated, because the facts in each of the cases were different, and it would serve no useful purpose to point out in this opinion in what these differences consisted further than to say in each of them there was testimony from which it could be legitimately inferred that the servants in charge of the train did not perform the duty imposed upon them by the law. As stated in the Golston case, *supra,* "it is not sufficient if it (plaintiffs' testimony) merely shows circumstances indicating the probability of neglect in the case." We think that the testimony in the instant case failed to show this much, and that the court was in error in not sustaining the motion of appellant for a peremptory instruction. The motion for the appeal is therefore sustained, and the appeal granted, and the judgment is reversed, with instructions that if the testimony should upon another trial be substantially the same to instruct the jury as indicated.