## Joy v. Commonwealth.

(Decided May 27, 1924.)

### Appeal from Hopkins Circuit Court.

1.  Embezzlement—Guilt Held for Jury and Evidence Sufficient to Support Verdict.—In prosecution for embezzlement against operator at passenger depot who claimed he was robbed, evidence held sufficient to carry case to jury and support verdict of guilty.

2.  Criminal Law—Any Error in Failing to Submit Question Whether Railroad Company was Corporation Held Harmless.—Any error in failing to submit question whether railroad company was corporation, in prosecution for embezzlement from it, under Ky. Stats., section 1202, held harmless, under Criminal Code of Practice, section 340.

3.  Criminal Law—Presumed that Railroad is Corporation.—Presumption will be indulged that a railroad company is a corporation.

4.  Criminal Law—Court Must Give Whole Law of Case.—Court must give whole law of case in instructions, whether asked to do so or not.

5.  Embezzlement—Court Did Not Err in Failing to Direct Jury to Acquit if Unknown Man Took Money.—In prosecution of operator at depot for embezzlement under Ky. Stats., section 1202, court did not err in failing to direct jury to acquit if it believed that an unknown man entered office and robbed cash drawer; it being sufficient presentation of defense simply to instruct to acquit unless jury believed beyond a reasonable doubt that defendant took the money.

6.  Criminal Law—New Trial Largely in Discretion of Trial Judge.—Granting of new trial is largely in discretion of trial judge.

7.  Criminal Law—New Trial Justified for Newly Discovered Evidence Only when it would have Controlling Effect.—New trial for newly discovered evidence should not be granted unless evidence would have controlling effect upon jury on another trial.

8.  Criminal Law—Refusal of New Trial for Newly Discovered Evidence Held Not Abuse of Discretion.—Refusal of new trial for newly discovered evidence in embezzlement prosecution, that an unknown person was seen near place money was taken, held not abuse of discretion.

COX & GRAYOT for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming.

Appellant Joy complains of the judgment of conviction entered in the Hopkins circuit court against him on

an indictment accusing him of the crime of embezzlement, under section 1202, Kentucky Statutes, and fixing his punishment at confinement in the state penitentiary for a period of one year. To reverse the judgment appellant prosecutes this appeal, insisting (1) that the court should have given a peremptory instruction to the jury to find him not guilty because of the insufficiency of the evidence; (2) instruction No. 1 was erroneous in that it omitted to submit to the jury the question of whether the Louisville & Nashville Railroad Company is a corporation; (3) the court failed in its instructions to submit to the jury the defendant's theory of the case, and (4) the court erred to the prejudice of appellant's substantial rights in refusing to grant him a new trial because of newly discovered evidence set forth in his motion for a new trial supported by affidavit.

1. Appellant had been engaged by the Louisville & Nashville Railroad Company as third trick operator at its passenger depot in Madisonvile for about two weeks when approximately $600.00 disappeared from its money drawers while appellant was on duty. His hours were from 11:30 p. m. until 7:30 a. m. He admits the money disappeared, but he says that while he was sitting in the office, between two and three o'clock a. m. on July 4th, 1923, a strange man with a slight growth of beard came in the door behind him, covered him with a pistol and directed him to put up his hands. Immediately following this the highwayman directed him to open the money drawer, which he did. After doing that he was directed to lay face downward on the floor; while in this position he says the highwayman took the money from the drawer and disappeared and he has never seen him since; that he did not know who he was although he was not masked.

The Commonwealth proved by two policemen that they passed the depot on their beat about two o'clock a. m., and that they saw appellant sitting in the office of the depot reading a newspaper. His coat was off and they observed nothing unusual about him; that without disturbing him they passed on down the track to the crossing only a short distance from the depot where they met an acquaintance and engaged in conversation; that they had not been there more than ten or fifteen minutes until they saw appellant coming around the square looking for a policeman. When he came up to the officers he told them he had been robbed and took them to the depot, where they

found the cash drawer empty, the lights out and the door locked.

Appellant continued to work for the railroad company until the regular man returned to take the place appellant was supplying, and appellant was sent to take charge of another office some distance away. He remained in this new place only a few weeks when he was arrested on a charge of embezzlement. The Commonwealth also proved that appellant was found with several hundred dollars in his possession, mostly in large bills, and it sought to show that this money was the result of the embezzlement. It also proved by the policemen who were near the depot and several other persons who passed by it between two and three o'clock a. m. that there was no suspicious looking person about the depot; that no one went to the depot or from it about the hour at which appellant says the robbery occurred. It was further shown by the Commonwealth that appellant had a few hundred dollars hidden in his necktie, and this money was taken out by him in the presence of the officers when he was called upon for bond. He explains the cash in his tie by saying that he had the money on hands and did not want to put it in the bank and for safekeeping put it in his tie. He further proved that he had on deposit some months before in Kansas approximately $1,100.00; that he had sold a restaurant for $340.00; that while he was working at Earlington, Kentucky, he had a roll of money. Several witnesses testified to having seen him with considerable sums of money, generally described as a roll of bills. This was a short time before the embezzlement was charged to have happened.

As appellant admits he was checked into the office at 11:30 that night with the money in the drawer, and it disappeared in a mysterious way, the evidence was sufficient to carry the case to the jury. Appellant's story of how the robbery occurred is very unsatisfactory. It is not at all convincing. The story is in outline only, his statement being as follows:

"Well, on the night of the third I went on duty as usual at the Madisonville station as third trick operator and other duties required at that office. On the morning of the 4th, I judge between two and three o'clock, I was sitting with my back to the door reading a newspaper and a man approached me with a gun in his hand, invited me to throw up my hands, demanding that the cash drawer should be opened,

and of course I opened the cash drawer and he relieved us of what money we had on hand at the station.

"Q. Did he command you to lie down? A. Yes, he commanded me to lie face down on the floor.

"Q. Did he get the money and leave, or what did he do? A. Well, after I opened the drawer and he commanded me to lie down, of course he cleaned out the money drawer with the exception of a few pennies and nickles and made his escape, went on about his business. I was on the floor and I wasn't in no hurry to get up and take a chance.

"Q. Was he masked? A. No, he wasn't masked. He had a growth of beard on his face."

He gave no details more than thus stated above and did not undertake to describe the robber who relieved the cash drawer of the money. We regard his story of the robbery one of the most damaging bits of evidence against him, and we conclude that the evidence was sufficient to carry the case to the jury and to support the verdict.

2. His next insistence is, that the court should have submitted to the jury whether the Louisville & Nashville Railroad Company is a corporation. The indictment alleged that the railroad company was a corporation and the Commonwealth proved this by one of its witnesses. It was not denied or questioned in any way. The instruction does not submit the question to the jury, but it does submit to the jury the question of whether the money belonged to the Louisville & Nashville Railroad Company and was taken with intent to deprive the Louisville & Nashville Railroad Company of it. It further submitted to the jury the question of whether appellant was the agent of the Louisville & Nashville Railroad Company, and was in control and custody of the money of the company at the time it was appropriated by him as agent or clerk of the Louisville & Nashville Railroad Company. While it was perhaps error to omit to submit the question of whether the railroad company was a corporation, we are absolutely sure that the error was harmless in this case, the facts all considered. Moreover, the presumption will be indulged that a railroad company is a corporation. Cincinnati, et al., R. R. Co. v. Commonwealth, 6 R. 306; L. & N. R. R. Co. v. Commonwealth, 11 R. 442; Madisonville, etc., R. R. Co. v. Commonwealth, 140 Ky. 255. Only errors which are to the prejudice of the substantial

rights of appellant will warrant this court in reversing a judgment in a criminal case. Criminal Code, section 340. This ground of complaint must be denied.

3. It is next argued that the court failed in its instructions to submit to the jury appellant's defense. This insistence is bottomed upon the rule that the court must give the whole law of the case in instructing a jury in a criminal prosecution, whether asked to do so or not. King v. Commonwealth, 187 Ky. 782; Thomas v. Commonwealth, 146 Ky. 790; Tucker v. Commonwealth, 145 Ky. 84; Commonwealth v. Saylor, 156 Ky. 252.

Appellant says his defense was that an unknown person had robbed the cash drawer and taken the money while he was put in fear by being covered with a revolver and that this theory should have been presented to the jury. In other words, he says the court should have directed the jury to find him not guilty if it believed from the evidence that an unknown man entered the office and after putting appellant in fear robbed the cash drawer of the money of which appellant is accused of embezzling. He relied upon Edgars v. Commonwealth, 195 Ky. 827; Trimble v. Commonwealth, 78 Ky. 176; Heilman v. Commonwealth, 84 Ky. 457; Cline v. Commonwealth, 161 Ky. 678. But none of these cases, we think, more than inferentially sustain his contention. If he had offered to and had proven an alibi we do not think that counsel would now be insisting the court should have instructed upon an alibi. While this is the rule in some jurisdictions we have never adopted it. The only question to be determined by the jury was the guilt or innocence of appellant, whether he took the money. The court, therefore, said to the jury in substance that if it believed from the evidence beyond a reasonable doubt that the defendant at the time and place mentioned in the evidence took the money of the railroad company then in his possession and converted it to his own use, while he was acting as the agent or clerk of the company, to find him guilty; and if it did not believe from the evidence beyond a reasonable doubt that defendant had so taken and appropriated the money of the railroad company to find him not guilty.

In homicide cases we have often approved concrete instructions upon self-defense, but the rule in such cases is different from that in cases of embezzlement. Appellant's defense was fully presented to the jury by the instructions, which directed it to find him not guilty unless it believed from the evidence beyond a reasonable doubt that he had embezzled the money. We think, therefore,

that the trial court did not err in failing to instruct the jury that if it believed from the evidence appellant was robbed in the manner stated in his evidence, to find him not guilty.

4. His last contention is perhaps his strongest one. In support of his motion for a new trial he filed the affidavit of one Wilkes, in substance saying that on the night of the disappearance of the money the witness saw an unknown man come from the platform of the depot near the office of appellant, and this was at a late hour in the night, supposedly not far from two or three o'clock in the morning. The witness was a night watchman, working for a lumber company near the depot and being up all night, slept most of the day, but he says he told only a few people about the incident before the trial and did not see or tell appellant what he knew about the case.

The granting of a new trial is largely in the discretion of the trial judge. A court is only justified in setting aside the verdict of a jury in criminal cases when it is satisfied that the newly discovered evidence would have a controlling effect upon a jury on another trial. If Wilkes' evidence be considered as true, yet it is not calculated, as we believe, to have vindicated appellant, for it goes no further than to show that some time during the night of July 3rd, or the morning of the 4th, the witness saw a man come from the platform of the depot. He did not know the man nor the hour at which he saw him leave the depot. This would not have exonerated appellant or have been more than a slight circumstance in his favor. We cannot, therefore, say that the trial court abused a sound discretion in overruling appellant's motion for a new trial based upon the affidavit.

Finding no error to the prejudice of the substantial rights of appellant, the judgment is affirmed.

Judgment affirmed.

Whole court sitting and concurring.