## Shaw v. Commonwealth.

(Decided May 10, 1929.)

NORMAN W. BOWMAN for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The grand jury of Lewis county returned an indictment against appellant and defendant below, Noah Shaw, in the first count of which he was charged with the offense of grand larceny, by stealing and appropriating to his own use certain enumerated articles of personal property belonging to E. B. Hale, without the latter's consent, and of the aggregate value of $64. The second count in the indictment averred that the property was stolen by some person unknown to the grand jury, and that defendant afterwards received it, knowing that it had been stolen. Defendant entered a plea of not guilty, and at his trial the commonwealth elected to prosecute him for receiving stolen property, which was the accusation contained in the second count of the indictment. The jury convicted him of that offense and fixed his punishment at confinement in the state penitentiary for a period of 2½ years. His motion for a new trial was overruled, and on this appeal by him his counsel urges five grounds as material errors sufficient to authorize a reversal of the judgment, and which are: (1) That the verdict is flagrantly against the evidence, and not supported by it; (2) that the court erred in overruling defendant's moton for a directed verdict to find him not guilty; (3) that the verdict was returned under the influence of passion and prejudice on the part of the jury; (4) error of the court in admitting incompetent evidence offered by the commonwealth, and (5) failure of the court to instruct the jury upon the whole law of the case.

Grounds (1), (2), and (3) are closely related, and grow out of the sufficiency of the evidence to sustain the verdict, and for that reason they will be disposed of together. On the night of September 21, 1926, E. B. Hale, parked his Ford automobile in front of a residence in Vanceburg, Kentucky, in which residence he spent the night. There was in his automobile at the time, and which was left therein when it was parked, various articles of personal property, consisting of men's clothing, a 22 rifle, and others enumerated in the indictment as the subject of the larceny. On the next morning the automobile, with all of its contents, had disappeared, evidently having been taken by some thief. The automobile was found a short distance from Vanceburg on the following Wednesday week, which was September 30, 1926, on or near a portion of a highway designated in the evidence as "Wooded Lane," and in a section of the country nearby the residence of defendant's father, with whom he resided; but its contents, charged in the indictment as the subject of the larceny, were gone. Investigation, and information derived therefrom, led to the issuing of a search warrant to search the elder Shaw's residence, and the one made thereunder resulted in the discovery of all the articles of personal property missing from the automobile, and the officers who made it testified, without objection, that defendant's father at the time stated that the discovered property was brought to his residence by his son, the defendant, who was absent at the time the search was made. A warrant of arrest was soon issued for defendant, but he was not found for as much as or more than two months. When the warrant was served upon him, he was confined in the jail of Campbell county, in Newport, Ky., charged with some other offense that the record does not disclose.

Defendant testified that, after the automibile was left at the place where it was found, he was passing it one night while walking to his home from a visit to a neighbor, and at that point he concluded to go through the field by a nearer route to his home, and when he got over the fence by the side of which the automobile was standing, he discovered the articles of personal property scattered along the fence, but at a distance of about 75 feet from the automobile, and he picked them up and carried them to his father's home. The commonwealth also proved that after defendant was arrested he applied to Judge Stone, the county judge of the county, and

asked to make a confession, which he did, and which was reduced to writing. At the trial Judge Stone testified that he had searched for that written confession, and that he had "so far" been unable to find it. He later reported to the county attorney, Mr. Parker, that he was unable to find it, and the attorney so stated to the court, without objection from defendant or his counsel.

The commonwealth then introduced the attorney, who was present, and perhaps wrote the confession, or was familiar with its contents, and he testified that in it defendant stated: "That he took the stuff from the side of the car and took it to his home, and that he was willing to suffer for what he had done, and that he wanted the others to suffer for what they had done." He also stated that defendant confessed therein that he did not have the consent of any one to take the articles, and that they did not belong to him, and he did not know who owned them.

It is therefore manifest that under the testimony, as so briefly outlined, neither of the grounds (1), (2), or (3) is sustainable. In the first place, section 1199 of the 1928 Supplement to Carroll's Kentucky Statutes, defining the offense for which defendant was convicted and fixing the punishment therefor, was amended by chapter 113, p. 345, of the Acts of 1922, by adding thereto these words: "The possession of any stolen goods shall be prima facie evidence of the guilt, under this section, of any person or persons having such possession." That fact had long before been presumptive evidence of guilt under a charge of larceny, and the 1922 amendment made it equally so in the offense of receiving the stolen property which was the subject of the larceny, committed by another with knowledge on the part of the receiver that it had been stolen. In other words, the statutory enacted presumption furnishes prima facie evidence that the violator of section 1199, when he receives stolen property, possesses the requisite knowledge that it was stolen, a necessary element to create the offense. In addition to that presumption, the circumstances under which defendant possessed himself of the involved property was such as to produce the belief by any reasonably prudent person that it had been stolen; and the same is true if he took it from the automobile as stated by him in his proven confession, and which he did not deny when he testified in his own behalf.

In addition thereto, defendant, before he could be arrested under the warrant, left the state and went to Dayton, Ohio, and was not found for more than two months after he took the property under the above-narrated circumstances, and at the time he was arrested he was going under an assumed name, which latter he explained by saying that he did so in order to not imperil his chances of obtaining employment when he regained his liberty. It is therefore clear, we repeat, that there is no room for the contention made in support of either of the first three grounds above enumerated.

The alleged incompetent evidence relied on in support of ground (4) consists (a) in the testimony hereinbefore referred to as to the contents of defendant's written confession; and (b) that the court erroneously admitted evidence of specific acts affecting defendant's reputation without confining the testimony to proof of general reputation. Several pages of the brief of defendant's counsel are taken up with the citation of text authorities to the effect that the contents of a writing may not be proven by parol, unless the absence of the writing is legally accounted for; it being argued that the written confession was not properly shown to have been lost or misplaced, so as to permit parol proof of its contents under the rule referred to. There can be no denying the correctness of the rule that counsel urges in his brief, but we do not agree with him that the absence of the written confession was not sufficiently shown, so as to permit the introduction of the parol testimony complained of. The county judge testified that "so far" he had been unable to find it, although it appeared that he had searched for it, and which was, in effect, saying that the confession could not be produced by him at the time he was called upon to give his testimony, because up to that time he had been unable to find it.

Moreover, the county attorney, who testified to its contents, stated that the county judge had subsequently been unable to find the writing, and which was not objected to, and the court did not err in failing to extend the time for a more extended search before admitting parol testimony as to its contents, although he was not asked to do so. Besides, we repeat, defendant did not deny the confession as testified to by the county attorney, except indirectly, when he testified in his own behalf. But, beyond all that, we would not be inclined to hold that

the error, if one, was sufficiently prejudicial to authorize a reversal of the judgment, in view of the other undisputed testimony in the case.

The complained-of testimony under subdivision (b) of this ground consisted in the statements by the sheriff to the effect that he arrested defendant while the latter was in the jail in Newport, Ky., and that he had then appropriated an assumed name. It is argued by counsel that such testimony was an attack on defendant's reputation by proving specific facts, one of which was the commission of another offense, for which he was incarcerated in the Newport jail. It requires some stretch of the imagination to so construe that testimony, but, if we should adopt it, then the testimony as to the incarceration was so interwoven with other competent testimony as to not permit its separation, and the fact of defendant assuming another name was, under well-known principles of the criminal law, competent as substantive testimony to prove his guilt of the offense for which he was being tried. It tended to show an effort on his part to conceal his identity and to avert arrest, which he had already succeeded in doing for as much as two months. The witness was asked where and when he arrested defendant, and his answer was the one hereinbefore given and complained of under this subdivision. We do not see how it could possibly prejudice the rights of the defendant, and, as we have intimated, the part of the answer complained of was responsive to the legitimate question propounded to the witness, and we do not conclude that it was erroneous, or, if so, not sufficiently prejudicial to alone authorize a reversal of the judgment.

The only argument made in support of ground (5) is that the court should have told the jury to acquit defendant, if they believed his testimony to the effect that he found the stolen articles as he stated in his evidence. In other words, counsel contends that it was the duty of the court to give a concrete instruction upon a fact the only relevancy of which was to prove defendant's plea of not guilty. In the first place, the finding of the goods as testified to by defendant did not detract from his guilt, if he knew that the property had been stolen from its owner, since in that case it would be entirely optional with him as to whether he would appropriate and receive them. The finding of the goods by defendant was but a revealing of them to him, and if he voluntarily received and appropriated them, and the other elements of the

offense existed, he would be guilty, notwithstanding his knowledge concerning the property was first obtained by him when he found it.

In the case of Gibson v. Commonwealth, 204 Ky. 748, 265 S. W. 339, and beginning on page 759 of the Kentucky Reports (265 S. W. 344), we discussed and determined, adversely to counsel's contention, the identical question of practice now under consideration. In support of our conclusion therein that defendant in a criminal prosecution was not entitled to such an instruction, the opinion refers to many foreign and domestic cases in which the point was similarly disposed of. Two of the domestic cases referred to therein are Wallace v. Commonwealth, 187 Ky. 775, 220 S. W. 1051, and Joy v. Commonwealth, 203 Ky. 426, 262 S. W. 585. In the Wallace case defendant relied on an alibi. On appeal he insisted that he was entitled to an instruction that, if he was not present at the time the crime for which he was being tried was committed, as he attempted to establish by his alibi, then the jury should acquit him; but we held otherwise.

In the Joy case a like contention was made by the defendant to the effect that, if a stranger (as testified to by him) robbed the railroad company of the money which defendant was charged to have embezzled as agent of the company, then defendant should be acquitted; but we overruled it and said that such testimony was, of course, admissible under a plea of not guilty, since it tended to establish that plea, and to produce a reasonable doubt of defendant's guilt in the minds of the jury, and that his rights were fully protected by the reasonable doubt instruction, and that he was not entitled to a concrete one based upon the facts relied on by him to establish his plea of not guilty. We will not repeat here our reasoning employed in either of these opinions, but refer the reader to them for that information. It is sufficient to say that those cases determined the rule contrary to counsel's contention, and, following them, this ground must also be denied.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.