## Mansbach v. Commonwealth.

(Decided September 27, 1929.)

JOHN F. COLDIRON and WOODS, STEWART, NICKELL & SMOOT for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Joe Mansbach, and Theodore Kaplan, appellant's clerk and manager of his business in his ab-

sence, were jointly indicted by the Boyd county grand jury, and in which they were charged with the offense denounced by section 1199 of our present Statutes (Ky. Stats., Supp. 1928), i. e., of receiving stolen property knowing it to have been stolen. The involved property as set out in the indictment consisted of a number of articles made of brass; but on the trial none of them was relied on, except a large brass bar, which the commonwealth insisted was of greater value than $20. The appellant moved for and obtained a separate trial, at which he was convicted, after entering a plea of not guilty, and punished by confinement in the penitentiary for one year. His motion for a new trial, which was overruled, contained a number of grounds as alleged errors, but on this appeal the chief one argued is, that the court erred in not directing his acquittal, the correct determination of which requires a brief and succinct statement of the facts as proven by the evidence.

The appellant is, and has been for the past 10 years, a junk dealer, and maintains a place of business in Ashland, Ky., and another one in Logan, W. Va. The brass bar received at appellant's Ashland store was stolen by one Rupert Van Hoose from the yards of the American Rolling Mill Company, of Ashland, and which, according to the thief, was taken by him from a pile of junk in the open yards of that company. It was cracked, which rendered it unfit, without repair, for the purposes for which it was designed, and under such conditions the testimony thoroughly established that it was entitled to be classified as junk. Van Hoose was a truck driver for the Ashland Transfer Company, which did general hauling and moving for every one requiring such services. At 5:30 a. m. on Wednesday, January 25, 1928, appellant left Ashland and went to his place of business at Logan, W. Va., where he stayed until the following Sunday afternoon, and did not go to his place of business until the next day, which was Monday. At about 10 o'clock a. m., on the 25th, Kaplan, the clerk, who was in charge of the business during appellant's absence, purchased from Van Hoose the brass bar in question, which was delivered in a truck of the company that Van Hoose was serving. It was weighed by Kaplan and found to contain 129 pounds, and he paid Van Hoose the usual price of 5 cents per pound, and put the bar among the classified brass junk that had been purchased from other parties, some of which were small pieces and had been put into barrel containers,

while other pieces, too large for the barrels, were stacked on the floor among the barrels. Other classes of junk were similarly classified and handled as the articles were purchased.

Van Hoose up to that time had maintained a good reputation, and nothing occurred at the time, or prior thereto, that remotely indicated that the property had been stolen by him, or by any one else. It was delivered at appellant's place of business in the usual way, and in a manner not calculated to arouse the suspicions of even an incredulous person, since there was nothing unusual in the transfer company delivering junk at appellant's store for any selling patron. At any rate, neither Van Hoose, Kaplan, nor any other witness testified to any fact connected with the purchase calculated to arouse the suspicions of a reasonably prudent person. As we have intimated, the price paid was within the limitations of that fixed by the market for that class of junk, and the fact that it was piled among, or perhaps behind, some of the barrels pursuant to the usual method, is not sufficient to characterize the transaction as a clandestine one, nor to indicate knowledge of the dishonesty of the seller.

There was at the time an ordinance in the city of Ashland requiring junk dealers to furnish a daily report to the police department of the articles purchased by them within the preceding 24 hours, and which the ordinance required should contain the name of each, the quantity, the price, and from whom purchased. Kaplan, on behalf of appellant, at the close of that day's business made out such a report, and it included the brass bar involved in this prosecution. But, instead of naming the seller as "Rupert Van Hoose," he was designated in the report as "R. Van Hoose," and it is intimated in brief that such discrepancy is a suspiciously guilty fact, but which we are convinced is entirely unsupported by logic or reason.

Kaplan left that report on his desk, with the intention of having it delivered to the police department by some employe or other messenger, but it was overlooked until perhaps the 29th of January, and the police department, observing the purchase of the brass bar from Van Hoose (complaint having been made by the owner), procured a search warrant for appellant's store, and found the bar stored as above indicated, and which fact appellant first learned on Monday, after his return to Ashland

from Logan, W. Va. On that day, or Tuesday following, the police force again appeared at appellant's store and informed him that they wished to search for other missing articles belonging to the Rolling Mill Company, but stated to him that they had no search warrant; whereupon he immediately informed them that they needed no search warrant for his store, and that they were at liberty to search anywhere and everywhere they wished. They searched the store, and discovered other brass articles similarly stored in appellant's house, to which the Rolling Mills laid claim; but it was overwhelmingly shown that they were purchased from other persons than Van Hoose, and nothing was testified to by the latter to show that any such prior sales by him to appellant were made under any suspicious circumstances whatever.

The above-cited facts, especially the outstanding and essential ones, were positively and credibly testified to by more than one witness, and were contradicted by no one, while the good character of appellant was established by the testimony of bankers, lawyers, and other business men, though a policeman and a railroad claim agent weakly testified to the contrary. We say "weakly," because upon cross-examination their testimony was shown to have been founded almost entirely not from what others said, but from the individual opinion of each witness.

But, regardless of the condition of the proof on the issue of appellant's reputation, it is difficult for us to understand the court's ruling in denying the acquittal instruction, unless he was influenced by the amendment to the Statute, supra, of March 24, 1922, which is chapter 113, page 345, of the Session Acts for that year, saying: "The possession of any stolen goods shall be prima facie evidence of the guilt, under this section, of any person or persons having such possession." We are informed by counsel for appellant in their brief that the court was so influenced by that amendment, and which. if true, we think was error. It is contended in brief that, in so far as the amendment attempts to create a presumption of *knowledge* that the property was stolen, so as to sustain a verdict of guilty, it is unconstitutional, and it must be admitted that the contention is not entirely without support, but which it is not necessary to determine in this opinion, and for that reason it will not be done.

We referred to that amendment in the recent case of Shaw v. Commonwealth, 229 Ky. 412, 17 S. W. (2d) 267,

but the question was not raised therein, nor did we intend by the language we employed in that opinion to give greater effect to the presumption than as aiding the other proof in the case, so as, not only to authorize its submission to the jury, but likewise to uphold the verdict of guilty when there was other evidence to support it. We are thoroughly convinced that it was not the purpose of the Legislature to make the presumption arising from possession *alone* sufficient to authorize the jury to return a verdict of guilty, or the court to pronounce judgment thereupon, and which, at most, would give to the amendment only the effect of casting the burden on the possessor of stolen property to explain his possession, and which, if done so as to show his innocence, the prima facie presumption created by the statute would be overcome and extinguished.

A similar conclusion was adopted by us with reference to a statutory *evidence* enactment, relating to the violations of our prohibition statute, in the case of Lakes v. Commonwealth, 200 Ky. 266, 254 S. W. 908, and which interpretation therein announced has been consistently followed by us since that time.

Another illustrative and analogous interpretation is found in the numerous opinions of this court construing section 809 of our present Statutes relating to the killing of stock by railroad companies with engines and cars, and which, among other things, prescribes: "And the killing or injury of cattle by the engine or car of any company shall be prima facie evidence of negligence and carelessness on the part of the company, its agents and servants." In numerous cases, among which are McGhee v. Guyn, 98 Ky. 209, 32 S. W. 615, 17 Ky. Law Rep. 794; McGhee v. Gaines, 98 Ky. 182, 32 S. W. 602, 17 Ky. Law Rep. 748; Illinois Central Railroad Co. v. Gholson, 66 S. W. 1018, 23 Ky. Law Rep. 2209; and Louisville & Nashville R. R. Co. v. Hanger, 167 Ky. 493, 180 S. W. 787, we held that the statutory enacted presumption could be and was overcome by positive and uncontradicted testimony showing the exercise of ordinary care by those in charge of the colliding train, and consequent absence of negligence on their part.

Numerous other and similar interpretative instances could be cited, but we deem it unnecessary. If the case of the statutory enacted presumption against railroads, involving no more than a civil action against them, should be so construed, a fortiori should such an enacted

presumption in a criminal prosecution be so interpreted, and especially so when the very gravamen of the offense is attempted to be established by the statute. The uncontradicted testimony in the case, not only destroyed any presumption that may have been furnished by the fact of possession, but likewise created a state of case entitling defendant to a peremptory instruction directing his acquittal, even if he himself had made the purchase under the same circumstances, and, that being true, his right to it was not lessened, but was increased because of his absence and consequent want of knowledge that the purchase had been made until after the discovery of the property by its owner.

We therefore conclude that the court erred in not directing appellant's acquittal, and the judgment is reversed for proceedings consistent with this opinion.