## Page v. Commonwealth.

(Decided February 15, 1924.)

### Appeal from Daviess Circuit Court.

1.   Criminal Law—Remarks of Commonwealth's Attorney Held Not Improper.—The court did not err in permitting commonwealth's attorney, in stating the case to the jury, to state that defendant

had been threatening the prosecuting witness, having a right to state to the jury what he expected the proof to show in such regard.

2. Criminal Law—Grounds for New Trial Not Argued Considered as Abandoned.—Grounds relied upon for a new trial, if not mentioned or argued in the brief of appellant, will be considered as abandoned.

3. Indictment and Information—Either of Two Persons Charged Jointly with Assault Could be Convicted as Principal, or as Aider. —Under an indictment simply charging father and son jointly with commission of assault, the court did not err in charging that the jury might find either guilty of acting as principal and the other of aiding and abetting, or might convict each of them if they did it alone, under Criminal Code of Practice, section 122, requiring certainty in accusation, as against defendants' contention that neither was accused of assaulting the victim alone.

4. Criminal Law—Conviction Not Reversed for Erroneous Instruction, Unless Substantial Rights Prejudiced.—A judgment of conviction cannot be reversed for errors in instructions, unless upon the whole record it appears that the defendant's substantial rights were prejudiced.

5. Witnesses—Relationship to Discredited Witness in Another Case Admissible.—Commonwealth's attorney might ask two of defendant's witnesses if they were related to another person having the same surname, who had testified in another action, and had made certain statements which were disbelieved by the jury and of a nature calculated to thoroughly discredit him as a citizen or a witness.

T. F. BIRKHEAD for appellants.

FRANK DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

The appellant, Virgil L. Page, was indicted on April 12, 1923, in Daviess county, Kentucky, with one Lonnie Page, his son, charged with jointly assisting, aiding, abetting, counseling and encouraging each other to commit the offense of assault and battery on the person of J. D. Hamilton, a neighbor who resided near them in the Green river district; and when tried at the next term of the court they were found guilty by the jury and a fine of $200.00 was assessed against each of them, and from this judgment they appeal.

It appears that J. D. Hamilton lived on the farm of George Nanz, six miles from Owensboro, and on it was a tobacco barn in which was stored a crop that had been

raised by appellant the year before, although at this time he was living on another place a short distance away. However, he had been engaged recently with his son and a number of other employees in stripping his tobacco, making it necessary for him to enter in and upon the grounds with his teams through the barn yard of J. D. Hamilton, the man later assaulted. On the day the trouble occurred Johnson had been employed with others to strip tobacco on the farm of James Whittaker, a cropper living near him; and about four o'clock, in the afternoon, accompanied by Emanuel Whittaker and Rudy Faith, he started home, and as they approached the county road, saw two buggies drive up and stop about fifty feet apart, and as they walked out on the road the testimony shows that he was accosted by appellant who said, "What did you mean by fixing that fence up there?" and he answered, I mean to keep my stock from getting out on the road." The evidence further discloses that instead of using the entrance through the barn lot to reach his tobacco, appellant had cut a wire fence, through which aperture Johnson's stock would escape to the surrounding country. Therefore, he had repaired the fence, which apparently angered appellant, and caused him to stop on the road and ask the question above referred to; and in explaining his reason for cutting the fence he claimed that one of Johnson's horses had distemper and he was afraid to drive through the lot in which they were confined. Johnson further testified that appellant said, "You are trying to keep me out of there from stripping my tobacco," and began cursing and abusing him, as well as applying a number of vile epithets, and caught him by the arm and began kicking him, and while so engaged appellant's son, Lonnie Page, jumped out of the buggy in which he had been sitting and began striking and beating him. He further said that his hands were in his pockets when appellant first caught him by the arm, and in the struggle that ensued his knife dropped from his pocket to the ground closed, and he made no effort to recover it until after the difficulty was over, nor did he attempt in any manner to resist or strike his assailants. In much of his testimony he was thoroughly corroborated by other witnesses, and while that offered in behalf of appellant is exceedingly contradictory, nevertheless it is rather conclusively indicated that the assault on Johnson was entirely unprovoked and unwarranted; that he at no time assumed the offensive; and it would appear as if appel-

lant and his son, accompanied by others, upon seeing him approaching the road had stopped with the evident intention of inflicting punishment upon him.

In the testimony of appellant he claims that during the difficulty Hamilton drew a knife and attempted to cut his son, Lonnie, who also testifies to this effect, and states that when he was striking and beating Johnson the latter was endeavoring to cut him, which, however, is not corroborated by other witnesses; and it would seem scarcely possible or consonant with reason that one armed with a knife would be seriously kicked, beaten and bruised without inflicting some injury upon his assailant.

In his motion for a new trial attorney for appellant sets out five grounds upon which he relies for a reversal:

"1. The court erred to the prejudice of the defendants and each of them by permitting the Commonwealth's attorney in stating the case to the jury to state to the jury over the objection of the defendants and each of them that the defendant, Virgil Page, had been threatening to do the prosecuting witness, J. D. Hamilton, injury, and was a bad man, and this was entirely prejudicial."

We can see nothing objectionable in the remarks of the Commonwealth's attorney if he said to the jury that he expected the proof to show threats on the part of appellant towards the man afterwards assaulted. However, in his brief attorney for appellant makes no mention of this objection or of several other grounds cited, and this court has hitherto held in Middleton v. Commonwealth, 198 Ky. 625, as well as other cases, that grounds relied upon for a new trial, if not mentioned or argued in the brief of appellant, will be considered as an abandonment of such grounds; and in pursuance of this policy we will consider only those grounds upon which appellant seems to rely.

Appellant strenuously contends that the court erred in instructions 3 and 6, claiming that they did not follow the indictment in which appellant and his son were charged jointly with the commission of the offense, but alleges that the instructions went beyond the charge in the indictment and gave instructions that the jury might find either guilty of acting as principal and the other of aiding and abetting; and further that the jury might convict each of them if they did it alone; and claims that the indictment does not accuse either of them of assaulting

Hamilton alone, citing section 122 of the Criminal Code, as follows:

"A statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

And Mulligan v. Commonwealth, 84 Ky. 229, in which we find:

"In order to convict one as aider and abettor, the principal must be indicted jointly with him; or, if he be indicted alone, the indictment must disclose the name of the principal, and give a description of his acts."

However, in the case at bar neither of the defendants was indicted alone but jointly, and either of them could have been the principal and the other, the aider and abettor. Attorney for appellant contends that he was notified by the indictment in this case that he was charged with the offense of acting jointly with Lonnie Page in making an assault, and says the instructions should have gone no further than to have told the jury that if he did act jointly with Lonnie Page to find him guilty; but that the court did not content itself with instructing the jury that far, but went beyond the charge in the indictment and authorized the jury to find him guilty if he did it alone.

The court offered ten instructions, which were necessarily long and contained much useless repetition; but it would seem to us that they were in nowise prejudicial to the rights of appellant and would appear more in his favor than otherwise.

We find in the case of Tucker v. Commonwealth, 145 Ky. 84:

"It is a well settled rule that instructions applicable to every state of case deducible from the testimony, or supported by it to any extent, should be given."

This was a joint indictment and it was made clearly to appear that both the appellant, Virgil L. Page, and

his son, Lonnie Page, were principals. In the case of McGehee v. Commonwealth, 181 Ky. 422, the court said:

"Where two persons are jointly tried for murder and there is proof tending to show that both defendants were guilty, both cases should be submitted to the jury; and one of them having been acquitted and the other convicted, the latter cannot complain, upon appeal, that both cases were submitted to the jury."

In the case at bar, while the instructions were probably prolific, they could not have been misleading to the jury, and under the Code a judgment of conviction could not be reversed unless upon the whole record it appears that the defendant's substantial rights were prejudiced.

It is further earnestly contended that the Commonwealth's attorney asked certain improper questions of two witnesses named Millay, who testified for appellant. It seems that in a trial a few days prior to this case, one Steve Millay, testifying in another action, had made certain statements which were disbelieved by the jury and of a nature calculated to thoroughly discredit him as a citizen or a witness; and during the examination of the two witnesses mentioned by the same name, appearing in behalf of appellant, the Commonwealth's attorney asked them if they were related to Steve Millay, who had testified in that court in another case, and they answered in the affirmative. We feel the Commonwealth's attorney was entirely within his rights in these questions, and in any event no objections were made nor exceptions taken by appellant's attorney at the time, although he claims he did not know of Millay's reputation until after appellant had been convicted and could not have realized the necessity or wisdom of objecting at the time the questions were asked.

Upon the entire record it appears that appellant has had a fair trial and the verdict is fully supported by the weight of the evidence. The judgment is, therefore, affirmed.