## Patrick v. Commonwealth.

(Decided April 22, 1930.)

34

LEEBURN ALLEN, J. C. LINDON and R. A. DUNN for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The grand jury of Wolfe county returned an indictment against appellant and defendant below, Roy Patrick, charging him with the crime of murder by maliciously shooting and killing Tol Craig, and upon his trial under a plea of not guilty he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for a period of six years. His motion for a new trial was overruled, and he has appealed and relies, through his counsel, on a number of grounds for a reversal of the judgment, the material ones of which will be discussed and disposed of during the course of the opinion.

It is first insisted that the court should have sustained defendant's motion for an instruction acquitting him of the charge, upon the ground that under the testimony as introduced by both the commonwealth and himself it was uncontradictedly proven that the fatal shot was made in his necessary self-defense from a threatened deadly attack being made upon him by the deceased, and which, from the testimony contained in the record, is undoubtedly correct. The homicide was committed on the depot platform in the village of Lee City in Wolfe county in the daytime. The deceased and defendant were and had been friends and were together for quite awhile on the day of the tragedy and immediately preceding it. While the two, and some others, were engaged in friendly conversation, some one called deceased aside and conversed with him for awhile upon a subject that was not heard by defendant and the others. After the conversation was over and deceased had returned to the crowd, he had in his hand his opened knife and was whit-

tling a stick with it, when defendant asked him; "What did you tell that fellow about the ties?" Deceased answered, in substance, that he told him that "you (defendant) got them." Whereupon defendant said, "If you told him I got them you told him a lie" or "a damn lie." Whereupon deceased, who was then standing some ten feet from the depot platform (which was four feet high), said, "Damn you," and started rapidly towards it and placed his open left hand and his clenched right fist, with the opened knife in it, on the floor of the platform, and with a spring jumped upon it and started towards defendant in a crouched position with his left hand extended and his right one, with the knife in it, drawn back. Up to the moment that deceased mounted the platform defendant was sitting on it near the wall of the depot building with a pile of tin and a gasoline drum, both of which were against the wall, just beyond him. He immediately arose and backed against the tin and the gasoline drum, when the deceased was about to strike him with the knife, and he then drew his pistol and shot deceased one time, from the effects of which he later died.

That testimony was, in substance, and to the same effect repeated, without contradiction by cross-examination or otherwise, by Sammie Dunn, Jr., and Oliver Dunn, each of whom was an eyewitness and was introduced by the commonwealth. As illustrating the account of the killing given by those three witnesses for the commonwealth, we insert part of the testimony of the last one:

"Q. Now tell the jury what happened, that is just what you saw and heard just before the shooting occurred. A. Roy Patrick was sitting upon the platform there, it was about four feet high off of the ground, and Roy Patrick said to Tol Craig what did you tell that fellow? Craig said I told him you took the ties, or something like that, and Roy said if you told that you told a damned lie, then Tol said damn you, he was about four or five steps from the platform and he ran to the platform put his hands upon the platform and jumped up, as he struck the platform with his feet he kept going towards where Roy was, Roy got up about this time and started stepping backwards. Tol never got straight, he was going right on to Roy and Roy fired and that was all of it.

Craig then sunk down and then scrambled around until he got to the edge of the platform. . . .

"Q. What did Roy do when Craig got upon the platform? A. He got up and started going backwards, Roy went back against a gasoline drum and a pile of tin, Craig had his right arm drawn back and looked like he was reaching at Roy with his left hand and holding his right like he was going to strike underhanded."

That witness was also asked and answered:

"Roy (defendant) was sitting down there on the platform and when he asked Tol Craig what he told that man or that fellow he was laughing and friendly was he not? A. Yes he was a friendly then.

"Q. He was likewise friendly and talking friendly when he said to Tol Craig that he told a damn lie? A. Yes, I thought he was joking, I know he was, he was still sitting down and was laughing then like he always is."

Some, if not all, of the witnesses corroborated the testimony of that witness as to the temperamental mood of defendant, and nothing in the entire record contradicts it. The defendant introduced himself and one or two other witnesses, all of whom testified, in substance, to the same effect, and every witness who was interrogated upon the subject stated that the deceased was a most quarrelsome and dangerous man, while the reputation of defendant for peace and quietude was good and had been for a number of years past, following his serving a term in the penitentiary for larceny.

It could serve no useful purpose for us to undertake to catalogue the cases from this court in which it was held that where the evidence in support of the right of self-defense on the part of the defendant was clear and positive and uncontradicted, by either express testimony ,or by circumstances, it was then the duty of the court to so tell the jury and to direct an acquittal. This court has always so ruled under such conditions and circumstances, and no opinion can be found to the contrary. If there was ever a case where that rule was applicable, this is one of them, and it is our conclusion that the court erred when it overruled defendant's motion for a peremptory instruction.

But, strange as it may seem, the court not only over-ruled that motion, but for some unaccountable reason refused and declined to give an instruction submitting defendant's right of self-defense. We say that such refusal was ''unaccountable'' because the practice in the administration and enforcement of criminal law in all civilized jurisdictions requires the submission of such right to the jury by an appropriate instruction in all cases where there is testimony to support it, and the failure of the court to do so in this case is readily admitted as inexcusable error by the commonwealth in its brief. Some of the many cases and authorities in this jurisdiction so holding are Roberson's New Kentucky Criminal Law and Procedure, sec. 531; Tucker v. Commonwealth, 145 Ky. 84, 140 S. W. 73; and Elliott v. Commonwealth, 152 Ky. 791, 154 S. W. 25. An almost unlimited list of others from this jurisdiction could be added to those cited, but we deem it superfluous to do so, since there is none to the contrary.

Counsel for defendant also argue that the court erred in permitting the commonwealth to prove that defendant had been previously convicted and served a term in the penitentary, but that testimony was elicited from defendant himself while he was on the stand as a witness in his behalf, and section 597 of the Civil Code of Practice expressly permits proof of such prior conviction, not for the purpose of establishing defendant's guilt of the offense on trial, but to impeach him as a witness in his own behalf.

The other errors complained of are of but little, if any, materiality. They relate to the introduction of testimony, but all of which were cured and virtually blotted out during the progress of the trial; but for the reasons stated the judgment must be and it is reversed, with directions to sustain the motion for a new trial and set aside the judgment, and for proceedings consistent with this opinion.