## Jones v. Commonwealth.

(Decided December 4, 1931.)

W. A. DAUGHERTY, J. W. CAUDILL and WM. DINGUS for appellant.

J. W. CAMMACK, Attorney General, for appellee.

Opinion of the Court by Judge Rees—Reversing.

The grand jury of Floyd county returned an indictment against the appellant, Mattie Jones, charging her with the crime of murder committed by maliciously shooting and killing Frank Jones, and upon her trial she was convicted of voluntary manslaughter and her punishment fixed at confinement in the penitentiary for a period of fifteen years and one day.

A number of grounds are relied upon for a reversal of the judgment, but the only one we deem necessary to consider is the alleged error of the trial court in refus-

ing to sustain appellant's motion for a directed verdict of acquittal.

The deceased was the father of the appellant. He was 45 years of age at the time of his death, and his wife, Roxie Jones, was slightly younger. They had been married 26 years, and to this union 11 children had been born, 8 of whom were living. Appellant was 23 years of age, and had lived with her mother and father continuously, save for one or two brief periods when the deceased drove her from the home. Roxie Jones had been an industrious, dutiful wife, but the evidence shows without dispute that the deceased had a jealous, quarrelsome, and overbearing disposition, and had always treated her and their children in a cruel and inhuman manner. She had been forced to leave his home on one or two occasions, but had returned on his promise not to mistreat her. The deceased was employed by Doug Hays, who had charge of the drilling operations for an oil and gas company in Floyd county. At times the nature of his employment required him to travel several miles from home, and he would be absent for several days. His wife, assisted by appellant and other daughters, was conducting a boarding and lodging house for the men working for the oil company, and at the time of the homicide several of these employees were staying there. The gross receipts from the boarders and lodgers amounted to about $250 a month, out of which all expenses were paid. Appellant did the buying, and assisted in the work about the house and in the garden. In addition to the members of the family and the boarders, the deceased's mother, who was 84 years of age, and Mrs. Jones' sister, Dolly Justice, also were staying in the house. There were only four rooms in the house, and the family lived in a crowded condition, several of them sleeping on the floor.

On the night before the homicide the deceased returned from the oil fields where he had been working for two or three days, and demanded that his wife turn over to him the money she had received from the boarders. This she refused to do, explaining that the bills had not been paid. He also demanded that she should sleep with him in an upstairs room, which she refused to do, stating that there were several other persons sleeping in the room, and also that it was necessary for her to sleep in the room occupied by his mother, who required the presence of some one able to wait upon her.

Appellant became angry and during that evening and the following morning was continuously quarreling with his wife and children. Shortly before noon on the day of the homicide he left the house, saying he was going to get some liquor he had concealed nearby. Appellant told him not to bring it into the house. He returned to the house after the boarders and other members of the family had left the dining room. His wife fixed a place at the table for him to eat, and went into the kitchen, leaving him and appellant alone in the dining room. A number of boarders were in the adjoining room. His sister-in-law, Dolly Justice, walked into the dining room and he ordered her to leave the house. At this point appellant said that she was paying for the groceries, and that her aunt had a home there as long as she was there. Thereupon deceased threw a plate at appellant, seized her by her hair, and forced her to the floor. His wife and another daughter, 14 years of age, rushed in from the adjoining rooms and attempted to break his hold on appellant. Several of the boarders were standing near, but made no attempt to interfere. In the struggle which ensued, the dining room table was overturned, and the deceased, his wife and two daughters struggled out of the dining room onto the porch and into a hallway, the deceased dragging appellant by the hair; he had a case knife in his hand, which was finally wrenched from his grasp. He then caught hold of a poker, which was also taken from him. After the struggle had continued several minutes, the appellant broke loose and struck deceased with the poker which had been taken from his possession. One of the bystanders said, "Turn him loose, he has a knife." Appellant went into the dining room, procured a pistol, and, upon her return to the scene of the struggle, observed her father advancing upon her mother with a knife and saying, "I am going to cut your damn head off." He then turned toward the appellant, made a like threat, and advanced on her. She told him to stop, he continued to advance, and she fired two shots.

These facts were established by the testimony of the witnesses both for the commonwealth and the appellant. There is but slight, if any, conflict in the evidence. The testimony of all the eyewitnesses to the homicide was substantially to the effect that the appellant committed the homicide in self-defense. Ordinarily, the question of self-defense is one of fact to be deter-

mined by the jury under appropriate instructions, but, where the evidence in support of the right of self-defense on the part of the defendant is clear, positive, and uncontradicted by either express testimony or by circumstances, it is the duty of the court to direct an acquittal. Patrick v. Commonwealth, 234 Ky. 33, 27 S. W. (2d) 387. In the instant case there was no material conflict in the evidence on this point. The witnesses introduced by the commonwealth made out a clear case of self-defense. The evidence without dispute shows that the deceased was a quarrelsome and brutal husband and father. He brought on the difficulty without provocation, and made a murderous attack upon appellant and her mother. Appellant was in great danger of losing her life or suffering great bodily harm at the hands of the deceased, and, not having provoked the difficulty, she was fully authorized under the circumstances in taking his life. There was no question for the jury to pass upon and the court should have sustained the appellant's motion for a directed verdict of not guilty.

Judgment is reversed for further proceedings consistent herewith.