## Tett v. Commonwealth.

(Decided Jan. 21, 1936.)

W. O. SMITH and HUBERT MEREDITH for appellant

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Will Tett and Marvin Martin were jointly indicted for the crime of willful murder. On his separate trial Tett was convicted, and his punishment fixed at death. The only ground for reversal of the judgment stressed in briefs of counsel, and which we deem meritorious, is the alleged error of the trial court in failing to instruct on manslaughter.

The accused were charged with the murder of Shelby Wells, a young white man twenty-eight years of age. The only eyewitness to the killing, other than the accused, was Walter Wells, father of the deceased. He testified that he and his son lived just outside the corporate limits of Greenville, and that Tett and Martin came to his home about 5:30 o'clock in the afternoon of August 25, 1935, in an intoxicated condition. He and his son were in the kitchen, and his son was peeling potatoes. The appellant and Martin entered the kitchen, and cursed and threatened Walter Wells. Each had a pistol in his hand. Appellant walked to the kitchen cabinet and poured out a drink of liquor. He and Martin then left the house, but returned in about ten or fifteen minutes. Walter Wells testified that they were cursing when they entered the house, and that appellant started towards him. He picked up an ax handle and struck appellant on the head. Appellant knocked him down with a chair, and kicked him. While he was on the floor, he heard a shot, and, as he arose, he saw Marvin Martin shoot his son, who was standing about 8 feet away. He did not know who fired the first shot. The deceased was wounded twice, once in the chest and once in the head. The wound in the chest was caused by a bullet fired from a .32-calibre pistol, while the wound in the head was caused by a bullet fired from a pistol with a larger calibre. When appellant was arrested a few hours later, a .32-calibre pistol was found on his person, with four loaded shells and one empty shell in the cylinder. After the shooting, Tett and Martin left, taking with them one-half gallon of whisky.

Rich Lucas, a neighbor, heard a noise at the Wells home as if the occupants were scuffling, and then two pistol shots. He saw Tett and Martin leave the house, one carrying a jug and the other carrying a pistol. Roy Wright was in the Wells home just before the shooting occurred. He went from the front room into the kitchen, and saw Will Tett, Marvin Martin, Walter Wells, and the deceased. He heard Tett curse Walter Wells, and tell him that, if he did not let him have some whisky, he would kill him. He was not present when Shelby Wells was killed.

The foregoing is, in substance, the evidence introduced by the commonwealth. The appellant failed to testify, and no witness was introduced in his behalf.

The court gave three instructions; one on willful murder, one defining the words "willfully" and "maliciously," and one on reasonable doubt. It is argued for the commonwealth that all the evidence pointed to willful murder, and that there was no evidence from which it could be inferred that the killing occurred under any of the conditions constituting voluntary manslaughter, and that therefore the trial court properly refused to give an instruction on that degree of homicide. We think, however, the evidence warrants the inference that the appellant may have shot and killed the deceased in a sudden affray, or in sudden heat and passion, and that the court erred in failing to give an instruction on voluntary manslaughter. No motive for the killing is shown. The testimony of Roy Wright discloses that Tett and Walter Wells were engaged in an altercation before the shooting occurred, and his testimony is corroborated by that of Rich Lucas.

The jury are not compelled to accept the prosecuting witnesses' version of the difficulty, but they may consider all the facts and circumstances surrounding the transaction, and, if it can reasonably be inferred from such facts and circumstancess that the killing occurred in a sudden affray, an instruction on voluntary manslaughter should be given.

It is not the duty of the court in every case of homicide to instruct as to both murder and manslaughter. Instructions must be based upon the evidence and given to suit each particular case, and, when the facts and circumstances establish the crime as murder or nothing, the court is not required to give a manslaughter instruction. Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14. However, if there is any evidence from which it can be inferred that the killing was done in sudden heat of passion or in sudden affray, the defendant is entitled to an instruction on voluntary manslaughter.

"Instructions applicable to every state of case deducible from the testimony, or supported by it to any extent, should be given."

Tucker v. Commonwealth, 145 Ky. 84, 140 S.W. 73, 74; Commonwealth v. Saylor, 156 Ky. 249, 160 S.W. 1032. Here there was no proof of pre-existing, direct malice, and there was evidence that the killing occurred

during a struggle following a quarrel. Under these circumstances, an instruction on voluntary manslaughter should have been given.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.