## Farley v. Commonwealth.
(Decided April 24, 1936.)

C. B. SPICER and POPE & BAKER for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, James Farley, was indicted by the Harlan county grand jury, charged with the willful murder of Sam Muncy.

Upon trial thereunder, he was convicted of the offense of voluntary manslaughter and his punishment fixed at 21 years' confinement in the penitentiary.

From the judgment entered on that verdict, he appeals, complaining that the court erred: (1) In admitting incompetent evidence of a prior, separate offense and in failing to admonish the jury as to the purpose for which this evidence was admitted; (2) in limit-

ing the self-defense instruction to the deceased, when there was another at the same place shooting at defendant at the time the deceased was killed; (3) in failing to give an instruction on involuntary manslaughter; and (4) in failing to give an instruction on accidental killing.

It is disclosed by the record that between 4 and 5 o'clock of the afternoon of August 20, 1935, Sam Muncy was shot and instantly killed as he stood, talking with others, on the side of the highway, near the steps and opposite the yard and hillside home of the appellant, James Farley, in the little community of Four Mile, Harlan county, Ky.

While the discharged gunshot striking the deceased extended from his cheek to his hip, the bulk of the shot load entered deceased's stomach, mortally wounding him.

The issue upon the trial was as to the identity of his assailant or who fired this fatal gunshot.

The commonwealth contends that appellant, James Farley, killed the deceased with a shotgun, while appellant contends that he fired no gun at all upon this occasion, but that it was the prosecuting witness, Bill Bailey, who then shot and killed him.

It was clearly established by the evidence that the shot, by which the deceased was killed, was fired from a gun.

It is further disclosed by the record that the appellant and the deceased had seemingly been good friends throughout the several years they had lived as close neighbors at Four Mile. However, it is not shown that the relationship between Bill Bailey and the deceased was not likewise also one of friendly neighbors.

Such being the situation, the commonwealth, upon the trial of appellant under the indictment accusing him of the murder of Muncy, undertook in part to establish his guilt therefor by introducing evidence of this previous difficulty, occurring between the appellant and the witness Bailey at so nearly the same time as Muncy's killing as to make the evidence competent as tending to show accused's state of mind and motive

when, it is charged, he shot and killed Sam Muncy within but a few minutes thereafter.

To this end, the commonwealth, by the testimony of Bill Bailey and other witnesses, showed that on August 20, 1935, the day on which Muncy was killed, the defendant (here appellant), James Farley, was drunk, or at least drinking, and that he spent much of the day in idly driving around in his car; that three times that day he visited Bailey's store at Four Mile; that on the last of these visits, which was between 4 and 5 o'clock of that afternoon, he was in a quarrelsome mood, and, after ordering a nickle's worth of candy from Mrs. Bailey, inquired with an oath of Bill Bailey ''if he liked the way he was carrying on''; that his language became more abusive, until finally his ill-humor culminated in his making an assault upon Bailey with a chair, whereupon (according to the testimony of Bailey) he wrenched the chair away from appellant and struck him in the head with it, knocking him down; that Farley's father came up at this time and helped him to get away, when Farley, scared, drunk, and mad at Bailey, left the store and ran to his home across the highway, a short distance up the hill, declaring as he went that he was going for his gun and ''kill everybody.''

After such declaration, Bailey testifies that he hurried to the nearby new store he was building for his pistol. He states that just as he reached the building, he heard a gun fired and Muncy's cry that he was shot; that upon hearing the shot, he looked in the direction of Farley's house where he saw the breech of a shotgun held by Farley as he stood upon his front porch, about which there was then a cloud of powder smoke arising.

Bailey's account of his previous encounter with Farley and of Muncy's killing by him is corroborated by the testimony of his wife, who also testified as an eyewitness to it, and of several other witnesses, who state that the report of the gunshot killing Muncy sounded like it came from ''off the hill,'' and that they saw a mist of smoke about Farley's house.

Further, their testimony is that as Farley ran from Bailey's store to his home, his wife, disturbed by his

witnessed encounter with Bailey, hurried down to the road from their home upon the hillside, calling for the deceased, Sam Muncy, to come and help her with her husband, or he would kill "the whole bunch of them."

The testimony is further that the deceased, Muncy, being thus summoned, at once came with Jim Collins, a kinsman of appellant, to Mrs. Farley's aid; that they met her on the roadside near the steps leading down from the Farley home, where they stopped to talk, and and where Muncy was standing when instantly killed by the fired gunshot.

On the other hand, the evidence for appellant is that after being dazed and badly bruised by Bailey's assault upon him, in which he states Bailey was the aggressor, he ran away to his home, not for a gun, but to escape the infliction of further injuries at the hands of Bailey; and that just before he reached his home, he was fired at by Bailey. Further, appellant testified that he did not fire his shotgun at all or at any one upon this occasion and could not have done so, as at such time he had no gun shells; that he heard reports of both pistol and gun firing coming from down about Bailey's store; and he insists that it was Bailey who fired the gunshot that killed Muncy.

Other witnesses for the defendant testified that they were driving through Four Mile at the time this tragedy occurred and had just passed Muncy coming up the road when they heard a gunshot fired and saw Muncy fall to the road; that the gunshot fired when Muncy fell came from up the road and from behind a car parked near Bailey's store.

For the defendant there was further evidence that the physical facts found as to the relative position of defendant's home, located high up on the hillside above the road, and Muncy's position when standing in the roadway, made it impossible for one standing upon Farley's porch to have either seen or to have shot at more of Muncy's body than the top of his head, for the reason that at the end of the Farley yard, next the highway, there is a high ridge, extending across it parallel with the road, which practically obscured or obstructed all view of those standing upon the highway beneath, except possibly the tops of their heads.

In support of such contention, Mr. Denham, a sur-

veyor, testified for the defendant, who stated that he had made a survey of the premises and a map thereof, which was introduced in evidence and showed such physical condition, assuming that Muncy was standing at the time he was shot at the point indicated upon the map, which witness stated was Muncy's position on the highway when shot as pointed out to him by Jim Collins.

In answer to this contention, however, the commonwealth denies that such indicated position of Muncy on the highway was his then real position thereon, but that he was at such time standing at a point further up the highway than was indicated on the map and where it is admitted Muncy would have been within full view of any one standing on Farley's porch, where the commonwealth contends the accused stood when firing at Muncy, standing on the highway below.

Upon this conflicting evidence and the issues raised thereby, the court gave an instruction (1) on murder; (2) on manslaughter; (3) the lesser degree instruction; (4) on self-defense, therein limiting the defendant's right to act only upon threatened danger at the hands of the deceased, Sam Muncy; (5) one defining the terms used in the instructions; and (6) the reasonable doubt instruction.

We will now turn our attention to the consideration of defendant's assignments of error, as recited supra, the first of which is that the trial court erred in admitting in evidence testimony as to the difficulty had between the appellant, Farley, and Bill Bailey, previous to the death of Sam Muncy, and in failing, upon defendant's objection to such testimony, to admonish the jury that the evidence was admissible and could be received and considered only for the purpose of showing defendant's frame of mind or motive in committing the charged offense.

In support of such contention, it is argued by learned counsel that the testimony is incompetent, because it improperly brought to the consideration of the jury an offense not related in any way to the killing of Sam Muncy, nor did it in any way tend to identify the defendant as the one committing the charged crime, nor show any intent, malice or motive on the part of the defendant for committing it.

It may be conceded, in answer to such contention, that where the evidence objected to relates to other offenses entirely disconnected with and distinct from the offense upon trial, and where same does not tend to identify the defendant with its commission or to show his state of mind, intent, or motive therefor, that same is irrelevant and inadmissible, but such is not our view as to the previous difficulty had between the defendant and Bailey, which was here permitted to be admitted in evidence. We do not consider that it was a prior offense entirely separate and disconnected from the alleged killing of Muncy by the defendant or irrelevant, for the purpose of showing the accused's state of mind and motive for shooting and killing Muncy, under the circumstances and declarations then made by appellant which the evidence conduced to show.

The generally declared and applied rule as to this is thus stated in 8 R. C. L., sec. 194, page 198:

"The general rule is, that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon his trial, must be excluded."

However, to this general rule there is an exception thereto equally well established as the rule itself, which is that:

"In making proof against a defendant it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove that the defendant has committed other crimes. So evidence covering the commission of other offenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. * * * When evidence of the character under consideration is offered by a prosecuting attorney, good practice requires that

he should state the purpose for which it is offered, and that the trial judge in the instructions given, *when requested by the defendant,* should instruct the jury on the subject of the purpose for which they may consider such testimony." (Italics ours.) 8 R. C. L., sec. 195, pages 199 and 200.

Further, the stated exception authorizes the admission of such evidence, in proof of motive, intent, knowledge, etc., "whenever mental state, scienter, or quo animo constitutes an ingredient of the offense charged," notwithstanding the fact that it may disclose a different crime in law. 8 R. C. L. sec. 197, pages 201 and 202.

To like effect has this court repeatedly spoken upon this subject, it having so announced both such rule and exception thereto in the case of Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724, 725, 727, as follows:

"It is a rule of general application that on the trial of a criminal case that the commonwealth should not be permitted to introduce evidence showing that the accused had committed other crimes than the one for which he is being tried. But there are certain well-defined exceptions to this general rule under which the perpetration of other crimes may be shown by the commonwealth to establish (1) identity; (2) motive; (3) intent; (4) guilty knowledge; (5) a plan, system, or scheme of perpetrating crime; (6) to cover up previous crime or the evidence of a crime for which he is at the time being tried; (7) or a crime, the proof of which is so interwoven as to be inseparable from the crime for which he is being tried, that the evidence of the two acts cannot be separated. * * * Morse v. Com., 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; Moore v. Com., 188 Ky. 505, 222 S. W. 934; Clary v. Com., 163 Ky. 48, 173 S. W. 171; Kirby v. Com., 206 Ky. 535, 267 S. W. 1094; Thomas v. Com., 194 Ky. 491, 239 S. W. 776; Newton v. Com., 195 Ky. 764, 243 S. W. 1031."

As coming within the principle of the exceptions stated, in Gaines v. Commonwealth, 242 Ky. 237, 46 S.

W. (2d) 75, 77, it was held that the trial court properly admitted evidence as to another offense, which showed that after the homicide, the accused attempted to shoot an eyewitness, who was running away from him, and fired at another who remonstrated with accused, the court there saying:

"The uniform rule respecting the admission of evidence of other offenses has been many times stated. Keller v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 998; Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724, and cases cited. * * * We conclude that the evidence as to what he [the accused] did immediately after the killing was also admissible as coming within the exceptions to the rule of exclusion. The motive and malice which induced the defendant to kill Wilson still controlled and possessed him. Its force was still operating upon him without interruption, and his conduct was so commingled with the principal crime as to make the picture of the occurrence incomplete without a recitation of those acts. It was proper to be heard for a correct understanding and appreciation of the nature and quality of the principal act. Kelly v. Commonwealth, 237 Ky. [690] 691, 36 S. W. (2d) 344."

Compare also the cases of Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592; Canada v. Commonwealth, 242 Ky. 71, 45 S. W. (2d) 834; Crutchfield et al. v. Commonwealth, 248 Ky. 704, 59 S. W. (2d) 983; Kesterson v. Commonwealth, 254 Ky. 287, 71 S. W. (2d) 622; Deboe v. Commonwealth, 257 Ky. 792, 79 S. W. (2d) 236; Gaugh v. Commonwealth, 261 Ky. 91, 87 S. W. (2d) 94; Thompson v. U. S. (C. C. A.) 144 F. 14, 7 Ann. Cas. 62; People v. Gibson, 255 Ill. 302, 99 N. E. 599, 48 L. R. A. (N. S.) 236; Capone v. U. S. (C. C. A.) 51 F. (2d) 609, 76 A. L. R. 1534; Moore v. U. S., 150 U. S. 57, 14 S. Ct. 26, 37 L. Ed. 996.

However, appellant insists that even if this evidence as to the prior difficulty between himself and Bailey was admissible, as coming within the exceptions to the general rule, as stated supra, the court nonetheless committed reversible error in failing to admonish the jury as to the limited purpose for which it was allowed and for which they might alone consider it.

It is sufficient answer to this argument to say that, conceding arguendo that the admonition might have appropriately been here given by the court and would doubtless have been given upon the request of appellant's counsel therefor, the record discloses that he made no such request, and therefore may be considered as having waived right thereto.

Appellant next urges as grounds for reversal that the court failed to instruct the jury upon the whole law of the case, in that it failed to give an instruction on involuntary manslaughter or one on accidental killing, and, further, that the court erred in limiting the self-defense instruction to the deceased.

Considering these contentions made as all embraced under the one head of the court's alleged failure to give, by instructions presenting such theories of defendant's defense, the whole law of the case, it is sufficient to say that we find no testimony in the record raising or supporting such theories of defense upon which the suggested instructions might have been based. The appellant, when testifying in his own defense, did not even suggest that he had shot the deceased, Muncy, while wrongfully firing into the highway, which he states would present an instance of involuntary manslaughter, or that he unintentionally shot Muncy when mistaking him for his alleged assailant Bailey, and while acting in his self-defense against Bailey, nor when testifying did he even hint or claim that he shot Muncy either unintentionally or accidentally, but, on the other hand, he expressly denies that he shot him or even fired a gun at all.

The rule, requiring the court in a criminal case to give the whole law of the case, does not require the giving of instructions presenting every imaginary theory of defense, but only those covering such theories of defense as are supported by some evidence. The rule requires only that instructions should be based upon such facts as must be found by the jury in order to establish the guilt of the accused, or make out his defense. As said in section 643, p. 794, Hobson's Instructions to Juries:

"Where the evidence is entirely circumstantial, the court should give the whole law applicable to any

state of case that might have existed, but where there is evidence as to what occurred at the time of the killing, the court should instruct as to the law based upon facts developed in evidence."

Tucker v. Commonwealth, 145 Ky. 84, 140 S. W. 73; Commonwealth v. Saylor, 156 Ky. 249, 160 S. W. 1032; Page et al. v. Commonwealth, 202 Ky. 50, 258 S. W. 958; Joy v. Commonwealth, 203 Ky. 426, 262 S. W. 585; Vaughn v. Commonwealth, 204 Ky. 229, 263 S. W. 752; Moseley v. Commonwealth, 206 Ky. 173, 266 S. W. 1048; Patrick v. Commonwealth, 234 Ky. 33, 27 S. W. (2d) 387.

There was no evidence or claim made in the record tending to show that appellant upon this occasion shot Muncy in his self-defense as an assailant, or unintentionally, or accidentally through mistaking him for Bill Bailey, his alleged assailant, but, on the other hand, the evidence was (according to the testimony of many eye-witnesses) that Muncy's death was caused by a gunshot coming from Farley's home almost immediately after he had run to his home for the declared purpose of "getting his gun and killing everybody"; thus there is left no supporting ground for the contention that the court failed to instruct upon the whole law of the case, urged by appellant for reversal of the judgment convicting him.

It being our conclusion, reached after a careful review and consideration of the whole record, that no errors are shown to have been committed prejudicial to the substantial rights of appellant, it follows that the judgment should be, and it is, affirmed.