Delmer Lee WARE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

May 7, 1976.

Jack Emory Farley, Public Defender, Vincent D. Giovanni, J. Vincent Aprile, Jr., Asst. Public Defenders, William M. Radigan, Legal Asst., Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Schearer, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

On a Saturday night in November of 1971 three young women named Dorothy Mason, Marlene Mason and Katheryn Mason got into an automobile with three young men named Clarence Saylor, Raymond Dick and Ronnie Dick and were taken to the home of Delmer Lee (Jimmie) Ware in Pulaski County. According to the evidence for the prosecution, the girls were forced into the car by Saylor at the point of a shotgun and were unwilling participants in the subsequent events leading to the indictment of Ware, Saylor and Raymond Dick [1] for forcible rape.[2] Other counts in the indictments charged some or all of the men with indecent and immoral practices.[3]

In the proceeding now before us on appeal the counts against Ware for the rape of Marlene and Katheryn and against Clar-

---

1. The record does not disclose what charges, if any, were brought against Ronnie Dick. He did not appear at the trial.

2. KRS 435.090, now superseded by the Kentucky Penal Code.

3. KRS 435.105, now superseded by the Kentucky Penal Code.

ence Saylor and Raymond Dick for the rape of Marlene were consolidated for trial.[4] All three defendants were found guilty of the respective crimes for which they were tried. Clarence Saylor's conviction has been affirmed by memorandum opinion. This opinion covers Ware's separate appeal from his conviction and sentence to 15 years' imprisonment on each of the two counts on which he was tried.

Our factual summary will be confined to what is necessary to an understanding of the arguments discussed. There being no contest as to the sufficiency of the evidence to support the convictions, the evidence for the prosecution will be accepted as true.

The appellant, Ware, was referred to by Katheryn as "the bootlegger." Be that as it may, it is certain that the availability of alcoholic beverages was the source of attraction to his home. After the men had done some drinking the entire group, including Ware, proceeded in the same automobile to a cabin on the Piney Grove Road, where the four men took turns having intercourse with each of the girls and then forced them to perform oral sex acts (fellatio). Dorothy escaped for a time, but was picked up on the road and recaptured in the course of a trip to Somerset and back, following which the men continued to subject all three girls to sexual abuse during the remainder of the night. The girls managed to get away the next morning.

Ware denied having accompanied the others to the cabin on Piney Grove Road. His story was that he had loaned his automobile to a lady friend and that after some drinking and dancing and kissing (in which he did not participate) at his house he asked the other men to take him to town to see if he could find his car; that the trip to Somerset was made for that purpose; and that the others took him back home and left him there following an unsuccessful search for his car. This version of Ware's role in the events of the night was corroborated by Saylor and Raymond Dick. That he was at home all during the latter half of the night was verified by the lady friend, Anna Lou Richardson, who said that she brought his car there at about 1:30 in the morning and stayed with him until after noon on Sunday. According to the girls, however, the trip to Somerset began at the cabin on Piney Grove Road when the liquor supply ran out and on the way back the men stopped at Ware's to replenish the supply. Specifically, Katheryn testified that they all returned to the cabin.

Ware's assignments of error, and our opinions with respect to each, are as follows:

1. Prejudicial error in consolidating for trial the rape charges against Ware, Saylor and Raymond Dick.

RCr 9.16 requires separate trials if it appears that a defendant or the Commonwealth "will be prejudiced" by a joinder of offenses or of defendants for trial. Ware cites the following excerpt from *Hoskins v. Commonwealth*, Ky., 374 S.W.2d 839, 842 (1964):

"The prevailing rule appears to be that the mere fact that evidence competent as to one defendant but incompetent as to the other may be introduced is not alone sufficient to establish such prejudice as to require the granting of separate trials. Ordinarily there must be some additional factor, such as that the defendants have antagonistic defenses, *or that the evidence as to one defendant tends directly to incriminate the other*, e. g., one defendant's admissions directly implicate the other." (Emphasis added.)

A good deal of tripe has grown up around the question of what sort of prejudice should entitle a defendant to a separate trial. Perhaps the rule itself is not sufficiently explicit. "Prejudiced" means *unfairly* prejudiced. A defendant is prejudiced, of course, by being tried at all. Despite any contrary inference that might be drawn from the foregoing statement in

---

4. Dorothy Mason resides in Indiana and declined to appear. The record does not disclose what happened to the counts charging Clar-ence Saylor and Raymond Dick with raping Katheryn.

*Hoskins,* neither antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice. In this instance we do not have antagonistic defenses, so that subject need not be further pursued beyond this observation: That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than against a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together.

█ The most common example of improper joinder by reason of testimony pertaining to another defendant arises in connection with a confession that is admissible against one but not the other. This does not occur, however, when all of the evidence against one is equally admissible against the other, or when the evidence in question can be and is excluded by the trial court. Nor does it occur when the offending evidence is such that an admonition will reasonably suffice to limit or exclude its consideration with respect to the defendant against whom it would not be admissible in a separate trial.

█ In this case the principal evidence that may not have been admissible in a separate trial against Ware consisted of the events that occurred prior to the appearance of the other people at his house. The trial court duly admonished the jury not to consider that testimony as against him. We are of the opinion that the evidence was not of such nature that sensible, fairminded jurors could not be trusted to abide by an admonition. Cf. *Rigsby v. Commonwealth,* Ky., 495 S.W.2d 795, 798 (1973).

█ The remainder of the evidence related events, according to the prosecuting witnesses, that took place substantially in Ware's presence, and we think that all of it was admissible without any admonition limiting its effect. Nevertheless, time and again at the instance of one defense counsel or the other the trial court did exclude or admonish the jury not to consider various aspects of it. For example, at one point the judge gave an admonition not to consider any testimony as to what happened to Dorothy (who did not testify), at another he required Katheryn to confine her testimony to the acts of the three defendants on trial (excluding what was done by Ronnie), and more than once he instructed the jury not to consider the acts of any one of the defendants as substantive evidence against the others. For the reasons hereinafter set forth in our discussion of points 3 and 4, we think these exclusions and admonitions were not necessary at all.

█ There being nothing in the evidentiary aspects of the case to make a joint trial unfair, it was not an error to join the trial of the three defendants on the respective rape charges.

2. Denial of effective assistance of counsel by requiring Ware and Raymond Dick to use the same appointed counsel.

█ Clarence Saylor was represented by counsel of his own choice. Ware and Raymond Dick having claimed indigence, the trial court appointed another attorney to represent both of them. The appointment of separate counsel in every such case was strongly suggested in *Maye v. Commonwealth,* Ky., 386 S.W.2d 731, 733 (1965), because even though no conflict of interests may appear in the beginning there is a strong possibility that it may develop at any time. For instance, if one defendant decides to bargain for a guilty plea he becomes a likely adversary of the other, and the single attorney necessarily is caught in the cross-fire. In *Maynard v. Commonwealth,* Ky., 507 S.W.2d 143, 144 (1975), a conviction was reversed on the ground that one attorney could not properly or adequately represent defendants with antagonistic defenses. Nevertheless, since no conflict of any kind between the positions of Ware and Raymond Dick existed or developed before or during the trial of this case, whatever error may have been committed in requiring them to use the same counsel proved to be nonprejudicial.

We are not impressed by the argument that whereas Ware's defense was an alibi and Dick's defense was that none of the criminal acts took place their counsel was confronted with a dual responsibility of significant proportions. As we have seen, there was no inconsistency between the two defenses and no embarrassment of either defendant by testimony of the other.

Nor do we detect in the record any indication that the inability of counsel to cross-examine either of his clients in behalf of the other actually resulted in prejudice or disadvantage.

In fine, the argument on this point is directed entirely at shadows and possibilities that could have materialized but never did. We do not think it would make good sense to reverse the judgment on that nebulous a basis.

3. Prejudicial error in failing to admonish the jury to the effect that evidence of other acts of intercourse by Ware with Marlene following the first of such incidents could be considered only for the limited purpose of corroboration.

It was the theory of defense counsel, and accepted by the trial court, that whereas each defendant was accused of only one rape of each girl but the evidence covered several rapes of each, the Commonwealth was required to elect which act was to be the basis for the prosecution, and that in the absence of such an election it would be presumed to be the first act proved. Cf. *Burke v. Commonwealth,* Ky., 264 S.W.2d 669, 670 (1954). Hence, it is said, testimony relating subsequent acts of a similar nature must be limited to corroborative purposes, as tending to show a design or a lustful disposition.

As we see it, the law on this subject has become rather unreal. In the first place, the necessity of electing one of several similar acts as the basis for the prosecution would seem to proceed from two main purposes. One is to enable the accused to defend himself, by specifying what and when. The other is to protect him from double jeopardy with respect to the same act. Thus when a defendant has been charged with two or more similar offenses against the same victim it is vital to identify the one for which he is being tried. On the other hand, if the state seeks but one conviction it does not, or should not, really make much difference. In this case, for instance, there was evidence that Ware committed several acts of rape against Marlene Mason during the course of the night. He was indicted for only one of them. We think it would have been perfectly proper and fair for the jury to find him guilty of a single rape against Marlene on the basis of any one or more of the several separate acts proved. As a consequence, however, he could not thereafter be tried and convicted for a second offense of rape based on the same series of events proved in the first case. This is simply a matter of permitting the state to prove its case in the alternative, and we see nothing wrong with it. To the extent that earlier cases may hold to the contrary they are overruled.

The same problem frequently arises in cases of statutory rape, in which several criminal acts take place over an extended period of time and the prosecuting witness quite naturally is unable to recall the specific dates on which they occurred. In such a case technicality reigns over substance when the prosecution must stand or fall on the necessity of selecting and proving that one of those acts was committed at a certain time. It makes better sense for the jury to be allowed to base its verdict on a finding of whether the crime in question was committed at any time during the period specified in the indictment and covered by the testimony of the prosecuting witness, thus eliminating the fatuous song and dance in which the jury is permitted to hear about all of the different criminal acts but is admonished (uselessly, we suggest) not to consider them as "substantive" evidence against the defendant, but only insofar as they may tend to show motive or design, or a lustful disposition on his part, or the relationship of the parties, or to corroborate the witness's testimony with respect to the

offense for which the defendant is being tried.[5] If the state seeks but one conviction out of a series of similar criminal acts against the same victim, all of the evidence of all of the acts might as well be treated as and called substantive evidence. That is how the jury will look at it anyway.

▉ Though not argued by the Commonwealth, the fundamental principle on which the evidence of the other acts committed by Ware was admissible for substantive purposes is that because the whole sequence of criminal events took place without substantial interruption it was in effect a single and inseparable "transaction." As observed by the late Judge Willis in *Shivley v. Commonwealth*, 227 Ky. 748, 14 S.W.2d 205, 207 (1929), a similar case, "The series of crimes was so connected and continuous that it could scarcely be related in part . . . . The commonwealth was not required to [limit] its testimony to any single part of the transaction, but was justified in proving everything that occurred, from the time that the four defendants took charge of the wandering young woman and placed her in appellant's automobile until the termination of the whole execrable excursion." See also *Nolan v. Commonwealth*, 290 Ky. 482, 161 S.W.2d 593, 594 (1942), and *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795, 799 (1973).[6]

▉ In order to determine exactly what did or did not happen at any particular stage in the sequence it was necessary that the jury see the entire picture. In short, evidence that provides necessary perspective is competent. That it may incidentally involve other criminal acts does not perforce render it inadmissible. Cf. Wigmore on Evidence, § 218 (3d ed.); *Deboe v.*

*Commonwealth*, 257 Ky. 792, 79 S.W.2d 236, 239–240 (1935); *Farley v. Commonwealth*, 263 Ky. 769, 93 S.W.2d 858, 860–861 (1936).

Since the admissibility of this kind of testimony does not depend on its relevance to design, motive, or any other subsidiary proposition (*Wigmore, supra*), it requires no limiting admonition. Our cases indicating otherwise, including *Farley, supra,* appear to be mistaken in that respect.

4. Prejudicial error in similarly failing to limit the effect of the testimony relating the other sexual acts (fellatio) with Marlene and Katheryn.

What we have just said in discussing point 3 applies equally to all that was done to all of the girls, not only by Ware but by the other men as well, embracing "the whole execrable excursion." There was no necessity for any admonition.

5. Improper cross-examination by which the Commonwealth's Attorney elicited from Ware's alibi witness Anna Lou Richardson that her current place of residence was "upstairs" in the county jail.

▉ Considering Anna Lou's testimony that she did not do anything for a living, that on the night of the criminal events she could not remember much because she was (as she put it) "about half-juiced," "half-loaded," or "half-drunk," and that she went to bed with Ware and spent the night with him, we cannot think that her being in jail had any depressive effect on the jury's assessment of her character and credibility. The error, if any, was technical, the prejudice nil. Ware's ponderous argument centering on *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970), fits the title given by Shakespeare to a more entertaining subject.

---

5. Cf. *Williams v. Commonwealth*, 277 Ky. 227, 126 S.W.2d 131, 133 (1939); *Ashcraft v. Commonwealth*, Ky., 317 S.W.2d 179, 180 (1958); *Messmear v. Commonwealth*, Ky., 472 S.W.2d 682, 684–685 (1971); *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795, 799 (1973); Ro-

berson's New Kentucky Law and Procedure, Sec. 1802.

6. In *Rigsby* we used the term *res gestae,* which is rightly deplored by Wigmore. See Wigmore on Evidence, § 218 (3d ed.).

6. Improper argument by the Commonwealth's Attorney in his summation to the jury.

■ In a word, the argument in question was reasonably appropriate to the circumstances. It may have fudged a mite here and there, but on the whole it was not substantially improper or unfair.

The judgment is affirmed.

All concur.